THE STATE at Relation and to Use of KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION ET AL.

THE STATE at Relation and to Use of SHEFFIELD STEEL CORPORATION, Appellant, v. PUBLIC SERVICE COMMISSION, THOMAS BROWN ET AL., and KANSAS CITY, Intervener.

THE STATE at Relation and to Use of ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION ET AL.

THE STATE at Relation and to Use of MISSOURI PACIFIC RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION ET AL. —30 S. W. (2d) 112.

Court en Banc, July 8, 1930.

864

*Frank H. Moore* and *A. F. Smith* for relator and appellant Kansas City Southern Railway Company.

*E. T. Miller, Henry S. Conrad, L. E. Durham* and *Hale Houts* for relator and appellant St. Louis-San Francisco Railway Company.

*Richard H. Benson* and *Hackney & Welch* for relator and appellant Missouri Pacific Railroad Company.

*Samuel W. Sawyer, George J. Mersereau* and *Richard S. Richter* for appellant Sheffield Steel Corporation.

*D. D. McDonald, John T. Barker* and *J. C. Petherbridge* for Kansas City, Intervener.

868

GANTT, J.—Appeal by Sheffield Steel Corporation and railroad defendants from a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission authorizing Kansas City, Mo. (herein designated City), to construct in Winner Road (public street) a viaduct across the tracks of defendants and charging certain costs of construction to Kansas City Southern Railway Company, St. Louis-San Francisco Railway Company, Missouri Pacific Railroad Company and Sheffield Steel Corporation (herein designated Southern, Frisco, Pacific and Sheffield Steel). The order

was reviewed by the circuit court at the instance of the Kansas City Public Service Company (herein designated Street Car Co.) and railroad defendants. The Street Car Co., operating between Kansas City and Independence in the center of Winner Road, did not appeal. The City is an intervening party.

By ordinance the City provided for the improvement of Winner Road from 9th Street and Hardesty Avenue to the eastern city limits and for the construction of a viaduct 3675 feet in length extending from Ewing Avenue across the valley of the Blue River to Smalley Avenue thereby crossing tracks of defendants and the river. The proposed viaduct is eighty feet wide, with double-track street railway in the center of the sixty-foot roadway, on each side of which is a sidewalk eight feet six inches wide, and six stairways on which pedestrians can ascend to the floor of the viaduct. Vertical clearance of 22½ feet above the rails and lateral clearance of eight feet six inches from the center of tracks is also provided. The right-of-way of the Frisco, with one main track and space for five more tracks, is west of the river and 325 feet east of Ewing Avenue; east of the Frisco is the right-of-way of the Pacific, with two main tracks, one switch track and space for one more track; east of the Pacific and connecting therewith are two switch tracks on the land of Sheffield Steel; east of Sheffield Steel is the Blue River, 146 feet wide; east of the river is the right-of-way of the Southern, with one main track and space for four more tracks. These tracks run north and south and across Winner Road. Industries are located in the Blue Valley, which is destined to be an industrial center. Such is the opinion of officials of the interested railroads and the traffic-way commissions, improvement associations, chamber of commerce and other civic bodies of the City. For this reason provision is made for additional switch tracks under the viaduct. Only sections of Winner Road within the city limits have been conditioned for public use the whole width of the road. However, that part of the highway from the city limits east to Van Horn Road has been conditioned for pavement by the county, and there is now and has been for sometime an improved highway from this point to Independence. In other words, the county authorities are waiting for improvement of the road within the city that the highway may be for public use. At present the main highways between Kansas City and Independence are 15th Street and Independence Road. They have heavy grades, sharp curves, are crossed by the tracks of defendants at grade and are unsafe for traffic.

The proposed highway would be an entrance to Kansas City for eighty to ninety per cent of the traffic originating north and east of the city, and would divert most of the traffic from Independence Road and 15th Street.

In its report the Commission considered the extent to which the public using the highway made necessary the viaduct, and the extent to which the public using the railroads made necessary the viaduct. In this connection it considered the provision for additional switch tracks under the viaduct, the length of the approaches necessary to provide lawful clearances for present and future use, the present movements over the tracks and the movements over additional tracks made necessary by development of the valley, the delay, hazard, interference with railroad, pedestrian and vehicular traffic incident to a crossing at grade, and the permanence of the improvement.

On the other hand the Commission considered the industrial development of the valley from the standpoint of Kansas City, and considered the proposed traffic-way from the standpoint of the public, including the City.

Testimony was given concerning all these matters, including the number of movements and the number of delays and collisions incident to crossing the tracks intersecting Independence Road and 15th Street.

The engineers of the city and railroads testified concerning these questions and gave opinions on the apportionment of the cost of the viaduct. They did so by eliminating from the estimated cost of the viaduct certain costs of construction considered properly chargeable to the City and the Street Car Co., or either of them, and apportioned the balance among the parties to the proceeding. On consideration of the facts and circumstances in evidence, the Commission apportioned the costs as follows:

The original estimate of the cost of a 3675-foot viaduct was     $1,920,000.00

A revision eliminated an opening at the east end of viaduct for automobiles to reach the viaduct from valley     20,000.00

    1,900,000.00

In apportioning the cost of the viaduct the Commission separated the total cost of the viaduct into classes, and apportioned these classes as follows:

CLASS 1. The cost of constructing the street railway tracks, trolley poles, etc. on the original viaduct was estimated to cost $124,600. As this estimate was based on the original length of the viaduct of 3675 feet, and the revised plan called for a viaduct of 3513

Carried Forward $1,900,000.00

feet, the Commission took 3513/3675, or 95.5% of this $124,600, or $119,000. (All of which was charged to the Street Car Co.)    119,000.00

1,781,000.00

CLASS 2. The cost of keeping the floor of the viaduct on a plane across all railroad tracks, and the cost of the extension east of the Kansas City Southern tracks, exclusive of electric railway track—$352,000.

From this was deducted the saving by elimination of the well, $20,000. Leaving a balance of $332,000. (All of which was charged to the city.)    332,000.00

1,449,000.00

CLASS 3. The cost of paving and lighting the original viaduct was estimated at $114,500, 3513/3675, or 95.5% of this $114,500, was charged to the city.    109,160.00

1,339,840.00

CLASS 4. An amount equal to what it would cost to bridge the Blue River if the highway were constructed on the surface of the ground, $230,000 less $80,000, the cost of one approach, was estimated to be $150,000 and was charged to the city.    150,000.00

1,189,840.00

CLASS 5. The excess cost of strengthening the viaduct to support the street car traffic was estimated at 18%. Eighteen per cent of $1,189,840 is $214,170 (50% of this amount was charged to the Street Car Co. and 50% to the Railroad Companies).    214,170.00

975,670.00

Carried Forward $ 975,670.00

CLASS 6. The presence of the street car tracks required an additional 4 feet in the width of the viaduct. The increase in cost due to this width, 6% of $975,670 is estimated to be $58,540 (this was divided, 50% against the railroad companies). .                    58,540.00

                                                         917,130.00

Of this $917,130, 40% was charged to the City and 60% to the Railroad Companies.

The total cost of the viaduct as apportioned to the City, the Street Car Co. and the Railroad Companies (as a class), and the items thereof, are as follows:

### KANSAS CITY:

| | | |
|---|---|---|
| Cost not due to grade separation (class 2) | $332,000.00 | |
| Paving & lighting (class 3) | 109,160.00 | |
| Blue River bridge (class 4) | 150,000.00 | |
| 40% of $917,130 | 366,850.00 | |
| Total | 958,010.00 | —50.42% of total cost |

### THE STREET CAR CO.

| | | |
|---|---|---|
| Track, pavement, etc. (class 1) | 119,000.00 | |
| 50% of $214,170, cost of strengthening viaduct for street cars (class 5) | 107,085.00 | |
| 50% of $58,540, extra width for street cars (class 6) | 29,270.00 | |
| Total | 255,355.00 | —13.44% of total cost |

RAILROAD COMPANIES:

| | |
|---|---|
| 60% of $917,130 | 550,280.00 |
| 50% of $214,170, strengthening for street cars (class 5) | 107,085.00 |
| 50% of $58,540, widening for street cars (class 6) | 29,270.00 |

Total $686,635.00—36.14% of total cost

The total apportioned to the railroad companies, $686,635, was subdivided into two classes, $184,670 for approaches and $501,965 for the balance of the viaduct. This apportionment was made in the following manner:

CLASS 7. It was assumed that there were two separate viaducts with two approaches to each viaduct. It was also assumed that four approaches would cost $80,000 each, or $320,000.00

| | |
|---|---|
| 18% of the cost of these approaches, or $57,600 was included in Class 5, supra. | 57,600.00 |
| Balance | 262,400.00 |
| 6% of this $262,400, or $15,740, was included in Class 6, of | 15,740.00 |
| | 246,660.00 |

| | | |
|---|---|---|
| 60% of this balance of $246,660 was charged to the Railroad Companies | 148,000.00 | $686,635.00 |
| 50% of $57,600, was included in Class 5, plus 50% of $15,470 included in Class 6, is | 36,670.00 | |

Total 184,670.00

One-half of $184,670, or $92,335, was divided equally between the Frisco, Missouri Paciffic, and the Sheffield Steel Corp., the other half, $92,335, was charged to the Kansas City Southern    184,670.00

501,965.00

CLASS 8. This $501,965 was divided between the railroad companies on the basis of the number of tracks which could possibly be placed on the right-of-way of each of said railroads under the viaduct, the Frisco having room for 6 tracks, the Missouri Pacific 4, the Sheffield Steel 2, and the Kansas City Southern 4, thus charging the Frisco with $6/16$ or $3/8$ of $501,-965, the Missouri Pacific with $4/16$ or $2/8$, the Sheffield Steel with $2/16$ or $1/8$, and the Kansas City Southern with $4/16$ or $2/8$.

ST. LOUIS-SAN FRANCISCO
$3/8$ of $501,965, plus $1/3$ of $92,335, $219,014—11.53% of total cost.

MISSOURI PACIFIC
$2/8$ of $501,965, plus $1/3$ of $92,335, $156,270—8.23% of total cost.

SHEFFIELD STEEL
$1/8$ of $501,965, plus $1/3$ of $92,335, $93,525—4.92% of total cost.

KANSAS CITY SOUTHERN
$2/8$ of $501,965, plus $92,335, $217,826—11.46% of total cost.

It was further ordered that the Street Car Co. maintain and keep in repair its special equipment on the viaduct, otherwise the viaduct was ordered maintained by the City.

I. The railroad defendants contend the election by the City to cross the valley at high plane released them from contribution to cost of the viaduct. We hurriedly overrule the contention. De-  fendants' tracks made necessary a separation of grade at their intersection with Winner Road. In 1922 the City petitioned the Commission for authority to condition the highway at grade. Defendants favored a separation of grade at the intersection, resisted the petition and contended a crossing at grade would vastly retard the development of the valley and greatly increase the hazard incident to such crossing, because of the present tracks and other switch tracks to be constructed through the valley. They further contended the tracks were constantly being used by fast-freight and passenger trains and by switch movements serving the industrial tracks in the valley, and that the opening of a highway over the railroad tracks, frogs and switches at grade would not only seriously

interfere with the operation of trains and cars, but would create an additional unnecessary and unwarranted hazard to the public.

The evidence overwhelmingly sustained these contentions, and the petition was dismissed, the Commission finding that a crossing at grade at this intersection would be unusually unsafe and dangerous to the traveling public. On this review defendants concede the necessity of grade separation, but insist the highway should proceed at grade to the intersection and that a viaduct should be constructed over the Frisco, Pacific and Sheffield Steel rights-of-way, and another viaduct constructed over the Blue River and Southern right-of-way.

The Commission found the grade at the intersection of the railroad tracks and Winner Road could be separated by a viaduct spanning the Pacific, Frisco and Sheffield rights-of-way, and another viaduct spanning the Blue River and Southern right-of-way. It further found the future of the valley as an industrial center was assured, that more switch tracks would be needed and that a separation of grade at only the intersection would afford only temporary relief. Hence the proposed viaduct anticipating the need of other switch tracks and greatly reducing hazard to the public was approved. However, the idea of two viaducts was taken as a basis for apportioning cost to the railroads (including Sheffield Steel) for construction of the proposed viaduct.

The City is authorized to construct a high-plane viaduct over the valley, and its purpose in doing so cannot be questioned in this proceeding by defendants. The proposed viaduct separates the grade, which separation is conceded to be necessary and they are concerned only in the reasonableness of the project and the apportionment of costs. We next consider minor contentions.

II. Defendants contend the plan of arriving at the cost of separate imaginary viaducts by elimination resulted in an unreasonable apportionment. There is evidence tending to show that the cost of a separate viaduct west of the river would be $796,000. There was other evidence on the question, and the Commission was not bound by the estimates. But taking this figure as correct, the apportionment to the Pacific would be about twenty per cent of the cost of the imaginary separate viaduct amounting to $159,200. Whereas, by elimination, it was apportioned 8.23% of the total cost of the proposed viaduct amounting to $156,270. The apportionment to the other railroad defendants would also be increased by an apportionment based on the estimate of the actual cost of imaginary separate viaducts.

III. Defendants also contend that, by established rule, fifty per cent of the cost of grade separation should be apportioned to the City and fifty per cent to defendants. Decisions of the Commission are cited in which the cost was so apportioned, but other decisions of the Commission do not so apportion the cost. There is no such rule. The facts determine the apportionment. If warranted by the facts, the entire cost may be apportioned to a railroad.

IV. Defendants also contend the cost of widening and strengthening the viaduct for the Street Car Co. should be apportioned to the Street Car Co., or the City and the Street Car Co. The city cannot be charged for grade separation of railroads at their intersection. Only the railroads are interested, and the Commission properly apportioned fifty per cent of this part of the cost to the Street Car Co. and fifty per cent to the railroads.

V. Defendants also contend the Street Car Co. is not charged for construction in proportion to its benefits. There is no question of assessment of benefits in the case. It is a question of providing for the public safety by reasonable methods. Moreover, the Street Car Co. will use the highway, including the viaduct, as a part of the public. As such, its contribution on this account is covered by the forty per cent apportioned to the city. Differences could arise between the City and Street Car Co. on the question of apportionment, but defendants are not interested.

VI. Defendants also contend that Independence Road crossing could be elimited by separating the grade with two viaducts. Even so, the plan would afford only temporary relief, fill the valley with short viaducts, increase hazard, interfere with railroad, pedestrian and vehicular traffic and ruin the highway. Whereas, the proposed viaduct would decrease hazard, eliminate interference with railroad and public traffic, divert eighty or ninety percent of traffic from Independence Road to Winner Road, and thereby lessen hazard and interference with railroad and public traffic at said crossings. Moreover, the crossing is necessary for local traffic. Defendants proceed upon the theory that grade separation is unreasonable unless it results in elimination of one or more crossings.

VII. Defendants also contend it was speculative to use the possible number of tracks on a right-of-way as a basis of apportion-

ment among the railroads. We do not think so. The valley is an established industrial district and its growth assured. Mr. Johnson, president of the Southern and a civil engineer, so testified, and the defendants at the first hearing before the Commission so contended. The principle is recognized in Thomas v. Kansas City So. Ry., 261 U. S. 481, l. c. 483.

VIII. Defendants also contend the cost of the imaginary viaducts was increased by estimating said cost on the basis of open approaches instead of filled approaches. The evidence on the question is conflicting. However, if an increase so resulted, it was justified by decreasing interference with railroad traffic and by affording air and light to abutting property, and thereby avoiding or lessening damages to said property. Defendants cite State ex rel. Wabash Ry. Co. v. Pub. Serv. Commission, 306 Mo. 149, 267 S. W. 102, as holding that such damages are not for consideration in grade separation proceedings. We did not so hold. It was stated that in such proceedings the question of the right to recover such damages was not for determination. Nevertheless, the effect of grade separation on abutting property was considered in that case, pages 162, 166.

IX. Defendants also contend the apportionment to them was increased by finding that $80,000 was the cost of an approach to separate viaducts. It is insisted that the witness giving the estimate referred to an approach to a viaduct spanning only the Blue River. His testimony is the only evidence on the question, and it is open to either construction. In this situation the conclusion of the Commission should not be held unreasonable.

X. Defendant Southern timidly suggests the apportionment to the railroads should be on a basis of one instead of two imaginary viaducts, thereby apportioning to the other defendants a part of the cost of separating the sixteen hundred feet of grade between it and the other defendants. The Commission must take the Southern where located, and the suggestion is rejected.

Assuming the Commission has jurisdiction of Sheffield Steel, the report shows careful consideration of the interests of all concerned, and the apportionment of costs is just and equitable. The order is supported by substantial evidence and is lawful and reasonable. For these reasons no provision of the Federal and State constitutions is violated. [Erie Railroad Co. v. Pub. Util. Commrs., 254 U. S. 394, 409; Lehigh Valley Railroad Co. v. Pub. Util. Commrs., 49

S. Ct. 69; State ex rel. Wabash Ry. Co. v. Pub. Serv. Comm., 306 Mo. 149, 267 S. W. 102; State ex rel. Terminal Ry. Co. v. Pub. Serv. Comm., 308 Mo. 359, 272 S. W. 957.]

XI. Sheffield Steel contends it "is not engaged in any service which brings it within the jurisdiction of the Public Service Commission."

In 1888 Washington Park Boulevard (now Winner Road) was dedicated to public use by Willard E. Winner. Since then street cars have been operated over this highway from Kansas City to Independence. Soon after the dedication the railroads and Kansas City Bolt & Nut Company (now Sheffield Steel) entered the Blue Valley with railroad tracks crossing Washington Park Boulevard and Independence Road. The record is meager on the construction of the switch tracks and the arrangement with a railroad or railroads for connection with "the markets of the world." An ordinance of Kansas City authorized the Kansas City Bolt & Nut Company to construct, maintain and operate a switch track across Independence Road. There is also evidence that a switch track crossed Washington Park Boulevard by arrangement with the Street Car Co., but without authority of the City. There is also evidence that an ordinance of Kansas City authorized Sheffield Steel to construct a switch track across Washington Park Boulevard, but the track was not constructed.

The Sheffield Steel tracks may have been impliedly dedicated to public use as in the case of Richards v. Pub. Serv. Com., 293 Mo. 625, 239 S. W. 838. If so they could be extended to other parts of the valley for service to other industrial plants. [Union Lime Co. v. Railway, 233 U. S. 211.] But these questions are not for determination. Did the Commission have personal jurisdiction of Sheffield Steel? That is the question. The jurisdiction of the Commission is limited by the Public Service Act to corporations, persons, firms or co-partnerships serving the public. [Secs. 10410, 10411, 10425, 10459, R. S. 1919.] Moreover, public service does not necessarily follow a dedication to public use.

Sheffield Steel is a private corporation, manufacturing steel and iron products, and is located on both sides of Winner and Independence Roads. It seems that from the beginning the Pacific served the Kansas City Bolt & Nut Company and its successor, Sheffield Steel, by switching cars in, out of and about the plant. This service was rendered only from ten to twelve A. M. each day, thereby interfering with and delaying operation of the plant. In this situation Sheffield purchased three small engines, manned them with its own employees and thereafter did some of the switching. It sometimes received and delivered cars on the lead track of the Pacific, but owned no cars and did not move the property of others.

These movements were in no way connected with a service to the public. They were only for convenience and in aid of operation.

Attention is directed to paragraph nine of Section 10425, Revised Statutes 1919, as giving the Commission jurisdiction of Sheffield Steel. After naming certain public service corporations, persons, and firms, or co-partnerships to which the jurisdiction of the Commission extends, it is provided as follows:

"9. To all public utility corporations and persons whatsoever subject to the provisions of this chapter as herein defined. And to such other and further extent, and to all such other and additional matters and things, and in such further respects as may herein appear, either expressly or impliedly."

The City thinks we could, in an emergency, operate on Sheffield Steel through the word "impliedly." We do not think so. The paragraph including the word "impliedly" has reference only to the many incidental powers granted the Commission as necessary to powers expressly granted.

The Commission is without personal jurisdiction of the Sheffield Steel Corporation, and the judgment of the circuit court is reversed and the cause remanded, with directions to quash the order of the Commission herein entered.

It follows the motion to dismiss the appeal of the Pacific and Southern under rule fifteen is overruled. All concur.

## On Motion to Modify

GANTT, J.—Respondent (Public Service Commission) and intervener (Kansas City) move the court to modify its opinion by remanding the cause with directions to affirm the order as to the Kansas City Public Service Co. (Street Car Co.), and all appellants and to quash the order as to the Sheffield Steel Corporation. In the opinion we held that the apportionments of the cost of the proposed viaduct to the Kansas City Public Service Co., St. Louis-San Francisco Ry. Co., Missouri Pacific Railroad Co. and the Kansas City Southern Ry. Co. were reasonable and lawful. We further held that the Public Service Commission was without personal jurisdiction of the Sheffield Steel Corporation, and for that reason reversed and remanded the cause with directions to quash the order of the Commission.

By an amended motion to modify, it appears that Kansas City "to prevent further delay in the prosecution of the work of constructing said viaduct, consents that the said portion of the cost of said viaduct, which was assessed by the Commission against the city, be increased so as to include and absorb that portion of the cost of said viaduct which was assessed by the Commission against the Sheffield Steel Corporation."

The Kansas City Public Service Co. (Street Car Co.) did not appeal from the judgment of the circuit court affirming the order and did not appear in this court. Of course, the Sheffield Steel Corporation is not resisting the motion, and the Missouri Pacific Railroad Company filed no suggestions in opposition. However, the St. Louis-San Francisco Ry. Co. and the Kansas City Southern Ry. Co. contend the reviewing court can only affirm or reverse an order of the Commission, citing Section 10522, Revised Statutes 1919, which follows:

". . . Upon such hearing the circuit court shall enter judgment either affirming or setting aside the order of the commission under review. In case said order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and rejected, and enter a new order based upon the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action. No court of this State, except the circuit courts to the extent herein specified and the supreme court on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties. The circuit courts of the State shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission, as provided in this chapter, and the same shall be tried and determined as suits in equity."

By this section the circuit court is authorized as follows:

1. To affirm orders of the Commission.

2. To quash orders of the Commission.

3. To remand with instructions to receive testimony and enter a new order.

4. To remand for further action.

5. To correct orders and decisions of the Commission.

Thus it appears that the authority of reviewing courts is not limited as contended. But it is clear that the section prohibits said courts from usurping the legislative functions of the Commission. [State ex rel. v. Public Service Commission, 308 Mo. 359, 1. c. 380, 272 S. W. 957.] In the instant case that part of the cost of construction apportioned to the Sheffield Steel Corporation must be apportioned to the city in whole or in part, or apportioned to the railroads, or some of them, in whole or in part. If none of said cost is apportioned to the railroads, it thereby stands apportioned to the city. [Kansas City v. Terminal Ry., 25 S. W. (2d) 1055, 1. c. 1066.]

So we directed the circuit court to quash the order that the Commission might determine if the costs or any part thereof apportioned to the Sheffield Steel Corporation should be apportioned to the railroads or either of them.

Now the apportionments to the railroads being lawful and reasonable, and the city consenting to an apportionment to it of that part of the cost of construction apportioned to the Sheffield Steel Corporation, the Commission is left with no function to perform with reference to the apportionment of the cost of construction of the viaduct. In this situation we are authorized to dispose of the case. By doing so we in no way contravene the statute or organic law. The motion to modify is sustained and the judgment of the circuit court is reversed and the cause remanded with directions to quash that part of the order of the Public Service Commission apportioning part of the cost of construction of the viaduct to the Sheffield Steel Corporation and to otherwise affirm said order. The original judgment herein is modified accordingly and all motions for a rehearing are overruled. *Ragland, C. J.,* and *White, Walker* and *Atwood, JJ.,* concur.