Allen, J.
 

 The hearing of this question was held under Section 1229-16, General Code, which is as follows: “From the finding and order of the director that such improvement, mentioned in section 53, of this act [for the abolishment of existing grade crossings], is reasonably necessary and expedient, any railroad company or any interurban railroad company may, upon the question of such necessity and expediency, take an appeal to the public utilities commission of Ohio. A party desiring to take such an appeal shall file with said director written notice of its intention so to do within thirty days after service upon it of a .copy of said finding and order, as provided in section 54 of this act. Said director shall thereupon certify to such commission all original papers on file with him, together with a copy of all orders made by him in said proceeding. Said appeal shall be docketed by said commission and, after not less than ten days’ written notice to all interested parties setting forth the time and place when and where said appeal will be heard, said commission shall hear the same upon the evidence adduced before it and shall thereupon determine and decide whether the making of said proposed improvement is necessary and expedient. An appeal from the order of the director fixing the contribution of a street railway or an interurban railroad company to said public utilities commission may be taken and shall be heard and decided in the same manner. And any party to such proceedings on appeal, and deeming himself aggrieved by the decision of the commission
 
 *50
 
 thereon, may prosecute error or appeal to the supreme court as in other cases.”
 

 Since the statute provides that the commission shall hear the appeal on the evidence adduced "before it, the hearing was a proceeding
 
 de novo.
 
 Hence we proceed to consider whether upon the evidence contained in the record made before the Public "Utilities Commission the making of such proposed improvement is necessary and expedient.
 

 The record shows that the crossing in question is dangerous, but that no fatality has occurred at the crossing since the installation of flasher lights in 1926. The highway is heavily traveled, and is crossed diagonally by the Nickel Plate Railroad and the Lake Shore Electric Railway tracks, with a distance of some 250 feet along the highway between the railways. As stated in the finding of the commission, “The angle of approach is very acute and the view down the track is obscured to some extent although a view of at least 500 feet is possible from either direction.”
 

 The railroads are single-track railroads, with flasher lights protecting each railroad, the lights upon the west being about 60 feet from each track, and the lights on the east being about 90 feet from each track. Parallel to the north right of way line of the Nickel Plate Railroad there is a road known as Berkley Road, which runs westerly parallel with the Nickel Plate north right of way line to a point about 75 or 100 feet west of the crossing, where it abruptly turns south and enters the state highway. The existence of this road is described as an additional hazard, but the road is a cinder road, and serves a relatively thinly populated district.
 

 In view of the nature of the crossing, we do not disturb the finding of the Public Utilities Commission that the elimination of the grade is necessary. However, the statute requires that the director of highways find not only that the improvement is reasonably nec
 
 *51
 
 essary, but also that it is expedient. This word “expedient” cannot be taken to be meaningless. Counsel for the Lake Shore Electric Company contend that under the conceded facts the construction of the improvement at this time is not expedient, and we therefore proceed to inquire into that phase of the case.
 

 Punk & Wagnalls’ New Standard Dictionary defines “expedient” as: “Serving to promote a desired end or interest; suitable under the circumstances; contributing to personal advantage; proper or desirable; advisable.”
 

 In deciding whether the improvement is suitable under the circumstances, proper, desirable or advisable, we are necessarily compelled to consider the financial condition of the railroads in question at the present time. The Public Utilities Commission, in its opinion sustaining the order for the elimination of grade crossings, commented upon the fact that in later phases of the proceeding the court of common pleas would have full jurisdiction to apportion the cost properly as between the two railroads. But if neither of the railroads is in position to finance the project, apportionment between them will not solve the difficulty.
 

 The proposed structure is an overhead bridge, with a distance of 40 feet between curbs, and room for four lines of travel, in connection with which the Nickel Plate proposed to lower its tracks in the improvement of its own right of way. The state is expected to participate to the extent of 50 per cent, of the cost of the larger structure, and the total estimated cost of the project in which the railroads would be required to participate with the overhead bridge is $231,000, and with the lower bridge is $206,000. Under present conditions it is estimated that this cost is about 40 to 50 per cent, more than the cost would actually be if the improvement were constructed now.
 

 
 *52
 
 In 1929, when the director of highways found the proposed elimination of grade crossing to be reasonably necessary and expedient, the Nickel Plate Railroad did not contest the order, and therefore filed ho appeal. However, in this record, by agreement of counsel, it was stated that counsel for the Nickel Plate, if present, would testify that the Nickel Plate Railroad also does not feel that this project should go forward, because of its financial condition, which statement had been amply made by counsel for the Nickel Plate to the commission at the opening of the proceedings. Counsel for the director of highways conceded that the counsel for the Nickel Plate would testify that it did not feel that the expenditure should be made.
 

 While the Nickel Plate Railroad did not appeal from the order of the director of highways in 1929, when the order was made, this court will take judicial notice that the financial condition of all steam railroads has changed very much for the worse since 1929. Indeed, it is conceded in the record by the director of highways that “there is a stringency of conditions as to railroads,” and that the director “will concede, perhaps, at this particular time this improvement cannot be built, due to the finances of the railroad.”
 

 The record shows that for the years 1928, 1929, 1930 and 1931, earnings of the Lake Shore Electric Railway Company have not been sufficient to meet the interest on the bonds of the road. A comparison of the first six months of 1931 and the first six months of 1930 shows approximately a 30 per cent, decrease in gross revenue, and it is testified that it would be absolutely impossible for the Lake Shore Electric Railway Company to get funds to make the improvement at the present time.
 

 Under the agreed facts, therefore, in spite of the condition of the crossing, this court is of the opinion
 
 *53
 
 that expediency is not shown. The condition of grave danger which resulted in fatalities at the crossing has evidently been greatly obviated by the use of flasher lights. It is a question indeed whether much of the danger still existing could not, as suggested by counsel for the railroads, be further eliminated by the use of double flasher lights on each side of the crossing. Until the condition of the Lake Shore Electric Railway changes for the better, it is not suitable under the circumstances, desirable, advantageous or proper to compel it to enter into so large an expenditure. That is, the building of the improvement is not at this time expedient. The order of the Public Utilities Commission will therefore be reversed.
 

 Order reversed.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkaee and Stephenson, JJ., concur.