STATE OF MISSOURI at the Relation and to the Use of CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION, MILTON R. STAHL, ALMON H. ING, J. H. PORTER, J. FRED HULL and GEORGE H. ENGLISH, individual members of the Public Service Commission.—72 S. W. (2d) 101.

Division Two, May 17, 1934.*

---

*NOTE: Opinion filed at September Term, 1933, February 23, 1934; motion for rehearing filed; motion overruled at May Term, May 17, 1934.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts, Ilus M. Lee* and *Wright Conrad* for appellant.

*D. D. McDonald* for respondents.

FITZSIMMONS, C.—The Public Service Commission of Missouri, upon the application of St. Louis County, ordered the county and the Chicago, Rock Island and Pacific Railway Company to reconstruct the subway at the intersection of Woodson Road and the company's track in St. Louis County. The net expense to the railroad company of the ordered work according to the plans directed to be followed, the equal division of costs and the company's estimates, amounts to $6947.50. Upon certiorari, at the petition of the railroad, the Circuit Court of Cole County gave judgment affirming the order of the commission. From this judgment the company appealed to this court.

The company contended before the Public Service Commission and in the circuit court and it urges in this court that it should not pay

any part of the cost of constructing the conduit. Its first reason is that its revenues are inadequate to meet its current operating expenses and fixed charges, and therefore it cannot comply with the order of the commission requiring a net outlay of $6947.50. Its second reason is that the dangerous condition of the intersection was brought about by the inclusion of Woodson Road by St. Louis County in its extensive program of highway improvements. And in the execution of this program the county, without consultation with relator, increased the perils of the intersection by changing the course of Woodson Road near the point of its passage beneath the railroad.

The record shows the following facts: Woodson Road is a major highway of St. Louis County. It runs from St. Charles Rock Road on the north to Olive Street Road on the south. St. Charles Road is the route of U. S. Highways 40 and 61. Both the St. Charles Road and the Olive Street Road are main arteries of travel into and out of the city of St. Louis. The population of the communities served by the Woodson Road is 15,000. The nearest parallel roads are three miles east and west respectively. At a point 1000 feet south of Page Avenue, Woodson Road intersects the single track main line of the Rock Island Railroad. The track passes above the road on what is described as a 12-panel, heavy loading, fire proof deck, pile trestle. The trestle supports are pile bents, made of timbers. These bents are about fifteen feet apart. The trestle was built in 1910 ''during what was known as the horse-drawn vehicle age'' as the answer of the railroad puts it. Woodson Road formerly was a dirt highway, but lightly traveled, especially in winter. But in 1929, St. Louis County improved the road with a 20-foot concrete slab. The traffic then increased to 40 vehicles every 30 minutes at the intersection. The county also changed the course of the road so that it now passes beneath the trestle at an angle of 50 degrees instead of 70 degrees as formerly. Since a right angle intersection would be 90 degrees, the limitation of sight view along the highway toward the trestle at a 50-degree angle would be evident without further testimony. But one witness, a county engineer, stated that a person driving an automobile northwardly along Woodson Road could not see over 50 feet beyond the trestle. The county changed the course of the road at the intersection in order to take out several right angle turns.

Beneath the trestle Woodson Road, a 20-foot concrete slab elsewhere, narrows to the space between two bents. This space is fifteen feet wide at one end and eleven feet wide at the other. The result of the acute angle intersection and of the narrowed roadway is, as one witness stated, that persons driving automobiles along Woodson Road in opposite directions cannot see each other upon their approach to the intersection, and they cannot pass each other at it. It

is a one-way highway beneath the trestle. The two bents which delimit the road are no longer parallel to its route owing to the change of course. This condition adds to the peril of motor vehicle traffic. The timbers of these bents bear marks of collisions. All witnesses for the county and for the railroad at the hearing before the commission admitted that there was a hazard of collisions of motor vehicles at the intersection. Mr. Korsell, assistant engineer of the railroad, testified that there is some hazard to the present structure. Mr. Ford, assistant chief engineer of the Rock Island lines, stated that, "as the matter now stands, the bents in the highway do obstruct public traffic."

There were two hearings before the commission. At the first there were wide differences between the county and the railroad on the plans of alteration if a change should be ordered. At the second hearing they were in partial agreement upon a plan for a 30-foot clear roadway, with concrete piers at each side and steel girders to carry the railroad over the span. The county deemed fifty tons of steel sufficient for the girders, but the railroad insisted that sixty tons would be in accord with standard construction. The commission ordered that the conduit or underpass be rebuilt according to this plan, sixty-ton girders to be used, the county and the railroad to share the costs equally, and the county to pay to the railroad $1408, the agreed retirement cost of the present structure. An engineer, in the service of the railroad company, estimated the cost of construction, according to this plan, at $16,711. Half of this amount is $8355.50. If there be subtracted the retirement cost of the present trestle, namely $1408 from $8355.50, one-half the estimated constructing cost, there remains $6947.50, the amount first mentioned as the net outlay to be made by the company under the order. Experts called by the county placed the cost of construction at $1753 less than the amount stated by the company on a sixty-ton steel basis.

Concerning the financial inability of the railroad company to pay any part of the cost of reconstruction, Mr. Ford, assistant chief engineer, offered in evidence a financial statement, about which he testifies: "It shows that whereas the Rock Island had a net income, with no provision for dividends, from 1926 to 1930, of some seven to twelve million dollars over and above operating expenses, that in 1931 they ran behind $903,778, and so far, for the first three months of this year (1932) they are $2,546,794" short of operating expenses. He also testified that the company had reduced its force of employees forty per cent on account of its financial condition.

■ I. We do not see any merit in the relator's assignments of error. Section 5171, Revised Statutes 1929, provides that the Public Service Commission "shall have the exclusive power to determine and prescribe the manner . . . of each crossing of a public road

or highway by a railroad or street railroad and of a street by a railroad and *vice versa,* so far as practicable, and to alter or abolish any such crossing, . . ... and to prescribe . . . the proportion in which the expense of the alteration or abolition of such crossing or the separation of such grades shall be divided between the railroad or street railroad corporations affected or between such corporations and the state, county, municipality or other public authority in interest.'' A proviso that in crossing cases affecting the State highways not more than one-half of the cost of construction shall be apportioned to the State Highway Commission is not in this case. This statutory power of the commission has been sustained by many decisions of this court. [State ex rel. Town of Carrollton v. Public Service Comm., 63 S. W. (2d) 26, and cases there cited; also State ex rel. Alton Railroad Co. v. Public Service Commission (Mo.), 68 S. W. (2d) 691; State ex rel. Rutledge v. Public Service Commission, 316 Mo. 233, 289 S. W. 785.] The orders of the commission affecting crossings, like all other orders and decisions of that body, are subject to review by the circuit court for the purpose of having the reasonableness or lawfulness of such orders inquired into and determined. [Sec. 5234, R. S. 1929.] In the instant case, the order of the commission is sustained by evidence. It is not unreasonable or unlawful. Therefore it is conclusive on this court, as it was upon the circuit court which affirmed the order. [State ex rel. and to the use of Chicago, Great Western Railroad Co. v. Public Service Comm., 330 Mo. 729, 51 S. W. (2d) 73.]

■ Of the contention that the whole cost of the reconstruction of the grade separation should be borne by St. Louis County because relator will derive no benefit we may say in the words of this court, used in State ex rel. Kansas City Southern Ry. Co. v. Public Service Commission, 325 Mo. 862, 30 S. W. (2d) 112, l. c. 115: ''There is no question of assessment of benefits in the case. It is a question of providing for the public safety by reasonable methods.'' The trestle was built, as relator stated in its answer, before the commission ''in what was known as the horse-drawn vehicle age.'' The narrow one-way passage between the supporting bents was reasonably safe in that day. But in this day of motor vehicles, it is full of perils of collisions of automobiles with each other or with the bents. Expert witnesses for the county and for the railroad testified to these hazards. And these perils would exist, at least in some degree, if the county had not changed the course of the highway. This realignment, upon the record, was made in order that other risks of damage and injury at right angle turns might be removed.

■ In support of its point that the order of the commission violates the due process of law clauses both of the Constitutions of Missouri and of the United States, relator cites Lehigh Valley Railroad Co.

v. Board of Public Utility Commissioners, 278 U. S. 24, 49 Sup. Ct. 69. In that case, the United States Supreme Court, in an opinion by Mr. Justice TAFT, affirmed judgments adverse to the railroad company on a grade separation question in which there was a difference of $100,000 between the plan which the railroad advocated and the more costly plan which the commissioners adopted. The Supreme Court, in ruling against the railroad on the proposition that the additional cost of $100,000 was not within the limit of reasonableness, said by way of caution (49 Sup. Ct. 1. c. 72): "An increase from $200,000 to $300,000 for a railroad crossing might well, under different circumstances from those here, be regarded as so unreasonable as to make the order a violation of the company's constitutional rights and to be in the nature of confiscation. The protection of the Fourteenth Amendment in such cases is real and is not to be lightly regarded. . . . If the danger is clear, reasonable care must be taken to eliminate it, and the police power may be exerted to that end. But it becomes the duty of the court, where the cost is questioned, to determine whether it is within reasonable limits. (Cases cited.) We emphasize this, not because there is doubt about it, but because we depreciate the impression, apparently entertained by some, that in the safeguarding of railroad crossings by order of state or local authority the exercise of police power escapes the ordinary constitutional limitation of reasonableness of cost."

These words of restraint do not fit this case upon the evidence which we have epitomized. We may add that relator's answer before the commission reveals that for some time before the county began action, there were negotiations between the parties. The county proposed a plan at an estimated cost of $40,634 while the railroad offered a plan that called for an outlay of $31,135. Of these plans, the relator said in its answer:

"This respondent (railroad) feels that the less expensive plan should be adopted, but in order to get the matter adjusted amicably has offered heretofore to agree upon the plan proposed by the complainant, if the complainant (county) would deduct from the fifty per cent it proposed that the respondent should pay, the depreciated value of the present structure and the added cost incident to the changes in alignment of the highway, which were solely for the benefit of the highway users, which proposal was declined by the complainant."

It is true that the answer also discloses that the railroad changed its attitude so that it "now feels" (at time of answer) that the county should bear the whole cost. But the figures, taken from the answer, reveal the original views of the parties touching the reasonableness of the cost. At the first hearing before the commission, the county put in evidence a plan for a 46-foot clearance and 40-foot

roadway which would have cost $40,000. The railroad offered two counter plans each of which would have kept the timber bents. The first counter plan provided for two lanes in the highway, with one bent between the lanes. This involved a cost of $4,000. The second counter plan would remove all bents from the two lane highway and would cost $12,000. But at the second hearing the parties were in agreement on a plan for a 30-foot roadway. The only objection was by the railroad to the county's proposal of fifty tons of overhead steel. Relator contended for sixty tons and the commission made its order accordingly. In these circumstances the question of reasonableness of cost has been eliminated without regard to the fact that here the liability of the railroad amounts not to a total of $300,000, as in the Lehigh Valley Railroad Co. case, supra, but to $6947.50.

Concerning the case of Lake Shore Electric Ry. Co. v. Public Utilities Commission (Ohio Sup.), 180 N. E. 552, decided in 1932, which relator cites as authority for its proposition that on account of its financial condition it should not be required to bear any part of the cost, we make reference to our decision in the case of State ex rel. Alton Railroad Co. v. Public Service Commission, 334 Mo. 832, 68 S. W. (2d) 691, decided December 20, 1933. There we examined and distinguished the Ohio case. We may add that in the Ohio case the estimated cost of a proposed bridge was in excess of $100,000, one-half of which the railroad, by the order, was required to pay.

Relator's own evidence proves its financial ability to expend $6947.50 for a betterment which is in the interest of public safety. While we do not concede that the question turns upon income, we observe that relator's Exhibit 5, upon which it based its plea of financial inability to pay any part of the cost of reconstruction is a statement of income account for the calendar years 1926, 1927, 1928, 1929, 1930, 1931, and the first three months of 1932. The statement shows that the total net income for the years 1926 to 1930, both inclusive, over and above operating expenses, tax accruals, equipment rents, rents for leased roads, interest and other deductions, was $54,689,500. The same statement shows a net loss for 1931 and the first three months of 1932, of $3,450,572, or a net income of $51,238,928 for the whole period covered by the statement. There was no evidence of the capital structure of the relator. We are not wanting in the common knowledge of the general condition of the railroad business. But that knowledge should not overturn the judgment in this case.

No error appearing, the judgment of the circuit court is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All the judges concur.