STATE OF MISSOURI at the relation of the ST. PAUL & KANSAS CITY SHORT LINE RAILROAD COMPANY, a Corporation, Appellant, v. PUBLIC SERVICE COMMISSION.—98 S. W. (2d) 699.

Division One, November 12, 1936.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts* and *I. M. Lee* for appellant.

*James P. Boyd*, General Counsel, and *Daniel C. Rogers*, Assistant Counsel, for Public Service Commission.

HAYS, J.—This is an appeal by St. Paul & Kansas City Short Line Railroad Company, relator (in the court below), from the judgment of the Circuit Court of Cole County affirming, upon writ to review, an order and decision of the Public Service Commission dismissing an application presented by appellant to the commission for permission to maintain a certain bridge constructed and in use on its line of railroad.

In the application filed with the commission August 31, 1931, it was averred that through mistake and inadvertence of its engineering department the applicant had constructed a bridge over Shoal Creek with a horizontal clearance of slightly over fourteen feet, without compliance with the rule of the commission which requires a horizontal clearance of sixteen feet, and without previous application for permission so to do. It was further averred that through similar inadvertence appellant had constructed the bridge with a vertical clearance of twenty feet and ten inches instead of twenty-two feet required by statute (Sec. 4656, R. S. 1929), but that it was practicable to remedy the vertical clearance and appellant proposed to do so. (It was shown at the hearing that the vertical clearance had been increased to the required twenty-two feet, so that the application and proceeding involved only the matter of horizontal clearance.) It was also averred that the horizontal clearance could not be changed to sixteen feet without removing the structure and replacing it with a new bridge at heavy expense, and with appellant in a dire financial situation and with earnings so reduced as to make it almost impossible to bear fixed charges, it was impracticable to require the bridge to be removed and a new one constructed; that with the vertical clearance corrected the operation of the bridge would be safe and proper.

The bridge was on a new line of railroad constructed by appellant for an eighty-two mile cut-off on the Trenton line of the Rock Island Railroad in northwest Missouri between Coburn and Birmingham and was financed through appellant as a subsidiary company. There are four bridges on the line; two of them new, with sixteen-foot horizontal clearances, the other fourteen-foot horizontal clearance bridge was near Trenton, and thirty-five miles distant from the bridge in question, on the old line and installed before the commission was given jurisdiction over horizontal clearances.

On September 10, 1931, a hearing was held by the commission and the application was submitted upon the testimony given by two witnesses on behalf of the applicant; and on October 4, 1931, the commission delivered its report, in substance (formal introduction omitted) as follows:

In the construction of the new line of railroad above mentioned the applicant found it necessary to erect a bridge to carry its track over Shoal Creek. The engineering department of the company, in its effort to complete the line to enable operation of freight trains by July 1, 1931, erected during the month of June previous an old span having a fourteen-foot horizontal clearance, to be used as a bridge over said creek. That since the filing of the application herein the vertical clearance has been corrected and now complies with the statute, but the horizontal clearance still remains at fourteen feet.

I. L. Simmons, a bridge engineer for the Rock Island stated that it would cost $37,000 to make the horizontal clearance sixteen feet as required by the commission's general order, the salvage of the bridge being estimated at $2000. That the question before the commission is not the impracticability and expense of reconstructing the bridge already installed so as to comply with the commission's order.

Robert H. Ford, assistant engineer for the Rock Island, gave it as his judgment that it is safe to operate trains over the bridge with fourteen feet lateral clearance. The bridge in question has been in service approximately twenty-five years and the expected life is estimated at from ten to fifteen years.

The commission found that the engineering department, in installing the bridge without notice or application to the commission, had acted inadvertently and in good faith. The commission concluded that it was authorized by the statutes (Secs. 4656 and 4657, R. S. 1929) to grant permission to erect bridges and other structures with less clearance than that provided by statute or rule, but that it was without jurisdiction to grant permission to a railroad company to maintain a bridge of less clearance which it had installed without previous permission.

The commission denied the application and issued its order accordingly, to become effective ten days after said date. To such con-

clusions and order one of the commissioners dissented on the stated ground that the commission had authority to determine the merits of the application.

The applicant's motion for rehearing, filed November 14, 1931, was, after being under consideration during the interval, overruled on December 31, 1931, in a report made by a majority of the commissioners. A minority report was made by one commissioner and concurred in by another. These two commissioners concurred in the result of the majority report in its overruling of the motion for rehearing. On the last date stated above the commission entered and issued its order in accordance with the majority report, and made the same effective on that date.

By reason of the contentions of the respective parties we find it necessary to set out the majority report:

"In due time the applicant filed an application for a rehearing. We have given very careful and sympathetic consideration to the motion but now are of the opinion that we came to the right conclusion. It is unnecessary for us to pass upon the question of whether we have jurisdiction to authorize the maintenance of a structure with less than the horizontal clearance provided by law or by our rules where such structure has been erected without the authority of the commission in order to pass on the application. The facts in this case show without dispute that had the application been made for authority to erect the bridge, no showing could have been made which would have justified an order authorizing the construction of the bridge with the insufficient clearance. Certainly the applicant has not placed himself in a better position in constructing the bridge without authority and then asking for permission to maintain, than if the hearing was upon the application to construct.

"On an application to construct we would have been bound to find before authorizing construction that it would be impracticable to construct the bridge with horizontal clearances provided by our rules. No such showing could have been made. The evidence of the railroad's engineers indicates that they themselves would not have authorized the use of the bridge if they had not overlooked the fact that its horizontal clearance was only fourteen feet. The only possible ground on which it could have been found that a sixteen-foot clearance was impracticable would have been economy. There could have been no showing of impracticability on account of physical conditions. It could not have been shown that any extraordinary expenditure was necessary to erect the bridge in compliance with the rules. We do not believe that the present financial condition of the applicant makes such construction 'impracticable' as contemplated by the statute. It is our view that if the facts would not in the first place have warranted our permission to construct, they would not, *a fortiori*, warrant permission to maintain after construction.

"Therefore, irrespective of the difference of view as to our jurisdiction under the law, and with no necessity to resolve that issue now, we were right in denying the application. And, seeing no other possible result, we now deny and overrule the motion for rehearing.''

There are eight assignments of error, but essentially they raise but two questions: I. Did the commission refuse to entertain jurisdiction and to decide the application upon its merits? 2. Was the order and decision of the commission unlawful and unreasonable?

■ The appellant urges that both questions must receive affirmative answers. The greater part of appellant's brief and argument is devoted to the citation and discussion of law pertaining to the first question and proceeds upon the assumption that the decision rests upon actual failure and refusal of the commission to entertain and exercise jurisdiction. That assumption in turn, by necessary implication, rests upon the false predicate that the expression of lack of jurisdiction as contained in the first order remained operative and effectual in that regard, notwithstanding the report and order of December 31, 1931. Whereas, in fact and in law the latter supplanted the former so far as it was in conflict therewith, and otherwise supplemented and carried forward the former. So that, it cannot correctly be said that the application rode off on a question of jurisdiction. On the contrary, the commission did entertain jurisdiction of the question and did proceed to make its final decision upon the merits, and it was in the latter report so stated in plain and unmistakable language. Hence that question, having been thus eliminated by the commission's final decision and order, is not before us on this appeal and, of course, is not properly for our consideration.

After carefully considering anew the facts, as in suits in equity, we concur in the sufficiency of the commission's findings, as being supported by the evidence, some of which we have deemed it well to give in detail.

■ The question remaining is whether the decision of the commission on the facts was unreasonable and unlawful. It is urged by appellant that at the time the bridge was installed it was impracticable to comply with the commission's rule because of the shortness of time, the danger of using false work at Shoal Creek, and the necessity to install available bridge work to remove the hazard of the false work and to complete the line. This insistence is predicated on the testimony of Mr. Simmons, other details of which are, in substance: He designed this bridge in 1906. His company had in 1916 adopted bridge clearances of more than twenty-two feet vertical and sixteen feet horizontal, but he was not conversant with the rules of the Missouri Commission. He said that if he had known at the start, there would have been time enough to have gotten the proper materials, but he was pressed for time under the conditions and had to

put a bridge in; that being asked to put this bridge in he did so. Asked whether in his judgment, considering the present financial conditions, it would have been practicable to supplant the present bridge with a new one of correct clearance, he answered that from the difficulty he was having in getting money to carry out other things he would have quite a lot of difficulty getting the money to put in a new bridge; that it "is not the impracticability of constructing the bridge with horizontal clearance but the impracticability and expense of reconstructing this bridge to comply with the law." He further said the bridge had but one track upon it, is located in the country, and there is no occasion for men to be on the side of the train going over the bridge. A train, at the widest part, is ten feet six inches in width. Mr. Ford, assistant chief engineer of the Rock Island, stated that the appellant expended around $12,000,000 in financing this new line; the same has failed to earn its fixed charges during the year 1931; and that it would be a very serious matter for the railway to make any readjustments of the bridge at this time (date of hearing) because of the railway's financial condition. He said, "The reason why we have not been able to anticipate these and know more in advance, perhaps, is because of the financing of the line in sections. It has been the plain question of raising money ahead of the job. That has been its reactive effect in delaying somewhat the preparations for it. Meanwhile we were under a contract that would have proved burdensome after the first of the year and the pressure to get this line in operation has been very strong."

The question for determination is not whether this court, on the facts, would have made the order now under review, but whether the order as made by the commission was unreasonable and unlawful. The burden of proof is upon the appellant to show that it is unreasonable and unlawful. [Sec. 5247, R. S. 1929; State ex rel. Alton Railroad Co. v. Pub. Serv. Comm., 334 Mo. 985, 990, 70 S. W. (2d) 52, 54, and cases there cited.] Appellant urges that it was unreasonable and unlawful in requiring the bridge to be replaced by one having a lawful clearance, because such replacement is impracticable owing to the financial condition of the railway and its consequent inability to stand the expense of making the change.

The expense involved is $37,000 as stated. That would seem to be a minor item as compared with the total cost of this short line railway, which was designed to fill an important need of the Rock Island by serving as a cut-off between Trenton and Kansas City. By constructing this short line, eighty-two miles in length, from Coburn to Birmingham, a great many curves were eliminated and the Rock Island, through this subsidiary railway which it organized and financed, was afforded an entrance from Birmingham into Kansas City on its own lines, and with a saving of twelve miles' distance. For fifty or sixty

years past the Rock Island had been operating between Cameron Junction and Birmingham over the tracks of the Burlington over a trackage agreement, by its terms expiring December, 1930, but extended to a date not shown.

The appellant contends that the economic question now before us should be determined upon the condition existing at the time the question was raised. We are cited to the cases, among others, of Lake Shore Elec. Co. v. Commission (Ohio), 180 N. E. 552, and A. T. & S. F. Ry. Co. v. United States, 284 U. S. 248, which so laid down the rule. On the face of the record in the instant case it is apparent that the commission decided the question upon the conditions existing at the time the question was raised, that is, as of June and August, 1931. The various cases cited have no further application to the question at hand.

The courts take judicial notice of the general economic depression which came upon this country in the fall of 1929. The bridge is shown to have been installed in June, 1931. At most the evidence shows that it may have been expedient to install the bridge as was done, and later at the time the commission decided the question it may have been inexpedient, from appellant's viewpoint, to replace it with a lawful bridge. Expediency was the statutory rule in Ohio upon which was determined the Lake Shore Case above, which involved the question of contribution by a railway to the cost of grade separation sought by the State Highway control. The question before the commission in the case at bar was whether the change was impracticable; that is impossible or unreasonably difficult of performance (Funk & Wagnall's Standard Dictionary); a much stronger term than expedient.

We are not persuaded that the failure to install a lawful bridge was more than indirectly due to financial conditions, nor that its proper replacement would constitute an unreasonable burden and expense. It seems plain enough the failure was primarily due to neglect in planning and preparation.

Rather recently this court has considered this same economic question in relation to the cost of railroad and highway grade separations in cases involving the Alton Railroad; particularly in State ex rel. Alton Railroad Co. v. Pub. Serv. Comm., 334 Mo. 1001, 1003, 70 S. W. (2d) 61, wherein such question was considered at considerable length upon evidence much more specific than we have before us in this case. The evidence of that nature now before us is very general and rather secondary, coming as it did from the Rock Island's construction engineers. Yet we do not doubt that the appellant and its fosterer have shared the experience of railroads generally with regard to depletion of revenues due to the depression.

We are of opinion that the decision and order of the commission was not unreasonable and unlawful, and hence the judgment of the circuit court should be affirmed. It is so ordered. All concur, except *Collet, J.*, not sitting.